May it please the Court, my name is Jim Van Ness. I represent the appellant, Edward Bollinger. This case has been before this Court twice before on the exact same issue of qualified immunity. To resolve this case, the Court only needs to resolve one issue, and that was that when it was previously remanded, that the issue of the law of the case decided that qualified immunity was a question of law and off the table. And that was the basis in which the plaintiff approached pretrial motions with their motion in limitee to strike the affirmative defense of qualified immunity. What is the key issue here is that the facts that the appellee has argued, and going all the way back to the state court cases, the appellate court, the Court of Appeals, and the Supreme Court, they argued the identical facts. These facts have not changed. And when you get to the question of the third prong of Saussure, and that is the objective reasonableness, there's only two facts that are relevant from a legal standpoint. One is the actor's knowledge and their conduct. And those facts are undisputed. They've not been disputed for over ten years now. The appellee, nonetheless, in their motion to dismiss, charged that they were entitled to qualified immunity because that it was reasonable for them to believe that their acts were not in violation of clearly established law. Now, what was the clearly established law? The Ex Post Facto Clause. Well, I understand the Ex Post Facto Clause is there, but what was clearly established with respect to what they did here? The bedrock principle of Oregon state law is that an inmate is under whatever law that existed at the time that his act was committed. So the statutes that affected Mr. Bollinger were those that were in effect when his crime was committed, not those that were enacted later. And the state court cases in Oregon are replete with examples of inmates that actually refused parole. There was a case that was cited, I believe, in summary judgment by the defendant. It's the Erbs case in which the board wanted to put an end to the practice of inmates refusing parole. And the issue is this, is that under the matrix system, which no longer exists anymore, it was a sentencing system that inmates earned good time. And if they got to their good time release date, then they were unconditionally released. What happened in Mr. Bollinger's case, he was a matrix offender. He was just short, I want to say, 21 days of his good time release date. And the board decided to parole him over his objection. And in so, they paroled him with conditions. That case went to the Court of Appeals and to the Oregon Supreme Court, which recognized that the law, in effect at the time, did allow inmates to refuse parole. And when it went to the district court in the motion to dismiss, the appellees advanced the exact same argument that they lost in the Court of Appeals and the Oregon Supreme Court. And then this court reversed them after a full Saucier analysis, saying that the relevant facts, what they knew and what their conduct was, were not, had not changed. When it was remanded, appellees again filed for summary judgment. Same identical facts. And the, this court even recognized that while the sheer volume of the record had increased, there was no new relevant facts. These facts are not disputed between the parties, what the appellees knew and what they did. So in that posture, the district court nevertheless granted summary judgment and it came to this court again. And when it was remanded, and I want to quote this. The remand on the second Bollinger case. What page are you on? This is on the Excerpts of Record, page 139. 139, okay. This was the Court's decision. Since in the posture presented to us, and let me stop right there, the posture it was presented was that there was no dispute of facts, that the relevant facts, the knowledge and the conduct had been unchanged, that they did not, the appellees did not put forth any new facts, nor could they. They were stuck with what their decision was and in the context of that decision. And the Court goes on, this qualified immunity question is a purely legal one. And this was the basis in which plaintiffs made their motion to strike the affirmative defense of qualified immunity, citing this exact thing, that the only way to escape the law of the case doctrine is that if there were any new relevant facts, it's a given there weren't. This is not a fact-intensive case. You've heard fact-intensive cases this morning. This is not. This is a purely legal question and this Court has held twice before that it was a purely legal question and had decided in favor of the appellant. As a district judge, I would not have understood those two orders to have resolved the issue of qualified immunity and ruled it out. I would have understood it was inappropriate for me to dismiss the case originally and secondly, inappropriate for me to grant summary judgment on the issue in favor of the government. But I would not have understood. And furthermore, rule grant, grant summary judgment in favor of, as a matter of law, in favor of the claimant in the case. Well, and the trial court went on to ask the appellee what new facts because, again, the only way to escape the law of the case doctrine. In other words, to remove this question from a purely legal question, which is the Court's responsibility, not the jury's, it would have to be a fact question. It would have to be the objective reasonableness. It would have to do something with the knowledge and the conduct of the defendants. And there was nothing new on this. All those facts had been presented before. The trial court in the pretrial conference asked that exact question to the defendants' counsel. What new facts would you have me to consider to move this to a question outside of just a question of law? And that question, the question of law, has already been decided. Well, the question of law as to whether or not this is a violation of ex post facto, that has been decided. We know that. But the question for qualified immunity is not whether there was a violation of the ex post facto clause. That we know. The question is whether or not this is a violation that defeats a defense of qualified immunity. That is, how obvious was it? And is it your understanding that that decision as to how obvious a mistake of law it was, that that was a question for the judge? Or was that a question for the jury in your view? And the trial court had difficulty with that one. No, I'm asking you. Yeah, but I'm asking for what your argument is. Well, if the question is whether it was clearly established law, this Court has held over and over that that's a legal question. So whether the law was clearly established at the time. Yeah, but it's clearly established law of which the defendant should have been aware. I think there's a second piece to that. And is any piece of that, whether it's clearly established law or whether a law that the defendant should have been aware of, does any of that go to the jury in your view? I don't believe in the posture that this case was presented that any of that went to the jury. Simply because. I ask you a different question. Should any of that have gone to the jury? I don't believe so. Did you move for summary judgment? No. Why not, then? The plaintiff did not move for summary judgment. If you thought it shouldn't have gone to the jury, why didn't you move for summary judgment? I'm not sure I can answer that question. I don't. Well, let me back up. There is an answer to that question. When the second remand came in, the – there was a pretrial conference telephonic with the judge at which time plaintiff's counsel, myself, did ask the judge that there were a number of motions that needed to be filed. One of them included striking the defense of qualified immunity. There had already been a motion to strike the statute of limitations defense. And the trial court would not allow it. The trial court said reserve it for motions in limine. I understood at that time that all motions would be reserved as motions in limine. And I don't believe a Rule 56 motion was appropriate as a motion in limine. Okay. So you thought you were not allowed to – you thought that he basically ruled against you right there, saying go make a motion for summary judgment? Yes, Your Honor. Okay. Here's the – oh, no, go ahead. Go ahead. Judge Hopper, I'll ask you. Well, okay. Here's the question I have. This case on the impact of the 1985 amendment and onward was litigated through the Oregon Court of Appeal and up to the Oregon Supreme Court as to whether or not what they did, how they applied the sexual predator registration, all of that, on supervised release, how that fell within or without the board's authority. It took two appellate courts to wrestle with it. They rejected the board's arguments, saying we don't – you know, we think they're really stretching the statute. But they didn't say anything about their position being frivolous. What they said was, you know, we disagree with the board. So now what is the effect of that on the issue of whether the board having lost what I would say was a non-frivolous argument that what they did was within their power? What is it that is clearly established? What is it that is objectively unreasonable? Who makes those decisions? That's what I'm having trouble understanding in the posture of this case. Our prior dispositions say, as Judge Roll pointed out, simply based on what we see here on a motion to dismiss, it's premature. I'm trying to figure out what it is that the board members should have understood as obviously, clearly established and that they were objectively unreasonable in flying in the face of that. Let me back up just a little bit. One of the observations you made was whether it was frivolous or not. And the Court of Appeals, when they issued their decision, they said that the state's position was too irrational. The Supreme Court said it was the construction they put forth was highly unlikely. Yes, they did. The Court of Appeals also said it was inconsistent with the way the board had itself construed its authority pre-1985. That's correct. But the Oregon Supreme Court didn't pick up on that and didn't say basically throw them out of court. Right. But, you know, on the question of whether it's frivolous or not, that's as close of language that you can come to. Okay. So we can both read the opinion. So what was clearly established then? What was clearly established was that up until the time that this new statute was enacted, that inmates could refuse parole. And what was also clear was that you cannot apply a later enacted statute to an inmate. That the only thing that the inmate was subjected to, that would be like taking a matrix offender and putting him as a grid offender. He was sentenced as a matrix offender. And as such, part and parcel of everything that went with that was the regulations and the statutes that were in effect at the time. And part of those statutes required the board, when they would issue parole decisions, to allow the parolee or the inmate to accept or reject those conditions. Impliedly in that was that they could stay through their good time release date. And inmates did stay through their release date. And this is what the Erbs case later was about, was that the. How do you spell Erbs? I believe it's E-R-B-S. I can. What the parole board did was basically say, we recognize this is a problem. The Erbs case basically allowed Mr. Erbs to go free. He had served through his good time release date, and then he was paroled. And the Supreme Court have ordered and said, no, he served through his parole date, through his good time release date, he deserves his unconditional release. It was after that decision that the board adopted the policy of reviewing good time release dates just weeks before that date and putting those people on parole. So they knew with the Erbs case that they could not put somebody on parole that served through their good time release date. So then they adopted the policy, well, we're not going to let them get to their good time release date. The problem with that is, as a matrix offender, they're entitled to that time. They're entitled to good time release. And as a grid offender, which is the current system, they're not. It doesn't exist anymore. So plaintiff's position is that as a matter of law, the board knew what the contours of the law were. They struggled with it every day. They promulgated inconsistent policies. And they lost in Supreme Court cases as well. So that means that everything that they did in relation to that case and anybody else, they had violated the prisoner's constitutional rights and were liable for a 1983 violation. Well, the problem with that is that Mr. Bollinger was one of the few matrix offenders that was still in the system at this critical juncture. In other words, it's hypothetical that it could apply to many other inmates, but they don't exist anymore. Well, that wasn't my question. When it gets litigated, this is a confusing case for me because of the way it's postured for us. I'm still trying to figure out if there is some dispute about whether or not they had the authority to do what they did. What you're saying is it doesn't make any difference because it was clearly established that they couldn't lengthen the sentence based on post-1985 laws. So even if they had the authority under the 1985 amendment to do what they did, or under the new sexual predator sentencing, it was clearly established that if it had the effect of lengthening his sentence, they would have violated his constitutional right. Isn't that what you're saying? I am, but with a little caveat. And my time is up, but I'd like to add a caveat. That's okay. And that is this, that the board did, under this new statute, have the authority to place somebody on a six-month parole. Yes, and they did it for 12. And they didn't do it. They knew that they could put him on a six-month parole. Now, would that have violated his constitutional rights? The appellee has argued that it would not. I don't have an opinion one way or the other. Well, it seems to me it's critical to your analysis because, and maybe I'm wrong, but it just seems to me if they didn't have the authority to do it because its effect was ex post facto, that concept was clearly established. The concept you can't do something, but if there's a debate about whether or not what the legislature has enacted can be applied to somebody and the board, in good faith, attempts to apply it, and it turns out that the Oregon Supreme Court says, no, you're wrong. This is covered by just what we've previously said and what you yourself had recognized. So you're wrong. You couldn't even do it for six months. So the question is whether the board's now exposed to financial liability for having made a bad judgment as to how the law that the legislature enacted affected what they had been doing by way of sentencing. Well, there's a footnote to criminal statutes, and they can be applied retroactively if the legislation's success. And I don't know what the 1985 statute said, but it also is not what happened. And I guess I offer that because there's knowledge there. The defendants knew or thought that they could be authorized for this little period of six months, but they still violated the law by exceeding that. That's my point. Okay. Judge, may I ask one question? Please do. And that is, this has to do with waiver and whether at the close of all the evidence you moved for judgment as a matter of law on the issue of the qualified immunity so that the trial judge was on fair notice, that you wanted that issue withdrawn at that time after all the evidence was in. Did you do that? No, Your Honor, and I would go back. I believe that is the way that the appellee has styled their case. I would disagree with that styling. The fact is that right from the beginning of the case, when the court decided to allow this evidence in, the plaintiff clearly objected to that whole line of inquiry and the pointless formality exception with regard to jury instructions, with regard to motions in limine, with regard to it's covered in the trial memo. The plaintiff objected ad nauseum to this entire bit of evidence. But as far as moving for verdict as a matter of law, no, they did not. Okay. Let's hear from the other side. May it please the court, counsel, Erin Lageson on behalf of the defendants, and I'd like to at least start by focusing on why the trial court did not abuse its discretion when it denied the motion to strike the affirmative defense of qualified immunity on the grounds of law of the case. And I think the reason the trial judge was correct here is requires sort of a careful analysis of what the actual legal rulings were in the prior proceedings. At the 12B6 stage, we moved to dismiss on the grounds that based on the pleadings, it was clear that the defendant officials were objectively reasonable in their actions at the time. And this court reversed the trial court's dismissal, saying, applying the standard rule 12B standard of review, which is taking the factual allegations as true and construing them in the light most favorable to the non-movement, we cannot conclude that it would not be clear to a reasonable official that retroactively applying a statute to avert Bollinger's unconditional release would violate his due process right. The court further said we expressed no opinion on whether Bollinger's claims can survive summary judgment after a complete factual record. We note only that the dismissal on the alternative ground of qualified immunity was premature because that defense, which may or may not have some viability at a later stage of the proceedings, is not apparent from the face of the pleadings. So the way I read that ruling is it's saying there could be some set of facts out there that could emerge on summary judgment or at trial under which a fact finder could conclude that the defendants were not entitled to qualified immunity. But it certainly doesn't say that as a matter of law, the defendant officials were objectively unreasonable in their actions in paroling Mr. Bollinger. But what does it assume with respect to whether the law is clearly established? It's, I can't really, I can't tell exactly what it's assuming with respect to whether the law is clearly established. Just to step back from this for a second, I think it's, it is clearly established generally that dependent state officials cannot retroactively apply a law to a prisoner that's going to, I guess the usual statement is significantly increase the risk of punishment. The jury here was instructed that you can't apply a law retroactively if it will disadvantage the plaintiff. So the question here really, I think, boils down to whether the defendants knew that what they were doing was creating some kind of disadvantage for the plaintiff, whether they would have understood that based on the facts and circumstances at the time they made their decision. Did the state ever, or did the state and the individual defendants ever make an 11th Amendment argument in defense? I don't know. I'm not sure if we raised an immunity. I know we, early on, we moved for, we sought dismissal based on absolute immunity on the grounds that. Yeah, but that's a form of official immunity. I'm asking about state sovereign immunity on the 11th Amendment, as far as you're aware. And I couldn't find it in the record. No. We don't, you've never put that issue. No, and that wouldn't bar the claims against the individual. Well, sometimes it would and sometimes it wouldn't, but you've not put that into. Yeah, I think we viewed it as going against them in their individual capacities. Now, assuming that this were to go to judgment against these individuals and damages were awarded. Of course, that's an assumption, and that's not at all where we are right now. Many states have a statutory provision that if the individual defendants are represented by attorneys from the state or the municipality or whatever, and a damage award is entered against them, by statute, those individuals will not pay the judgment. Right, it's under the Oregon Torts Claims Act when individuals acting in the course and scope of their employment are sued and become liable for damages, the state pays that. So even though the judgment would run against these individual defendants, in fact it's the state that as a practical matter will pay the damage judgment. Unless they're so outrageously dialect in their performance, then there's an exception. Yeah, there's always, I forget the exact wordings of our Tort Claims Act, but if they're way outside the course and scope of employment, then we both don't defend or pay the damages. Right, yeah, the California statute that I'm familiar with is that the way they draw their line is that if repetitive damage is awarded, then the state or municipality may or may not, in their discretion, reimburse. Let me ask the question that Judge Roll asked and concerned him, and that is this issue of failure to move for judgment of law. I didn't at any time during the trial. How serious a problem is that? I am still trying to get a handle on what exactly the plaintiff's argument is. The sole claim of error is that the trial court erred in denying or abused its discretion by denying the motion. In limine and plaintiff isn't actually challenging the jury's verdict or contending that the trial judge should have granted judgment as a matter of law after the verdict came in, then that's not a problem. But if the plaintiff is contending that the evidence doesn't support the verdict and that judgment as a matter of law should have been granted, then this court's really kind of a stickler for the Rule of Fifty Motions. I think the Humetrix case says the requirements strictly construed, and even in that case the non-moving party had discussed with the judge, will we get to do Rule of Fifty Motions later, and the judge said, sure, and it never came up in this court held that that party could not challenge the sufficiency of the evidence on appeal because the Rule of Fifty requirements had not been satisfied. Well, here's what I'm trying, I have to share your confusion, but you were started down the road, and maybe this will help answer Judge Fletcher's question as well. You said that it was clearly established that they could not substantially extend a prisoner's sentence based on a new law. And then you said the fact question that you were focused on is, did the board know, in effect, that that's what it was doing when it imposed, denied him the opportunity to serve out his sentence and avoid the 12 months of supervised release? And counsel for Mr. Bollinger says, well, you put that before the Ninth Circuit before, and it went back down, and you didn't put any more evidence in other than that. Is that correct? I mean, I think what he's saying is unless you come up with some new facts, then you have lost under the law of the case. We have previously decided that if the law and facts are as presented to us on this motion to dismiss, don't change, then he has a case, but we don't know what evidence is going to come in. And he says, well, you went back down, and you didn't present any new facts. So am I reading what happened correctly, and is that the right answer? I think it's sort of a twofold response. As I started out talking, the procedural posture of the motions that went up in the legal standard applicable on the Rule 12b motion and on summary judgment motion.  I know what those are. And what I believe the prior rulings said is basically we can't tell whether an official objectively, reasonably would have believed their conduct was lawful on these particular facts. And I read that as saying, viewed in the light most favorable to the plaintiff, a juror could find no qualified immunity, but a juror also could find qual immunity, what the court did not do. On those same facts without new facts. Yes. What the court did not do was say, as a matter of law, no qualified immunity. It just sent the case back, and now we're at trial. The facts have been presented to the jury. It's a whole new ballgame. We don't view the facts in the light most favorable to a plaintiff anymore. We view them generally in the light that would support the jury's verdict. So the question then becomes, I guess, had plaintiff moved to challenge the jury's verdict under Rule 50, whether the facts could support the jury's finding that defendants acted objectively, reasonably. And I think there's sort of three types of key facts that came in primarily through Diane Ray's testimony. And Diane Ray testified that in this time period before the Supreme Court decision in Bollinger, nobody knew that defendants ever had some kind of right to refuse parole. And that goes to whether the defendants would have known that paroling Mr. Bollinger over his objection sort of was retroactively applying the law, because they didn't know that it was changing the extant circumstances. Instead, Diane Ray said the understanding was inmates didn't have the right to refuse parole. Here's a problem I've got with this case. It's singularly difficult. I mean, there are all kinds of little twists and turns and so on. But one of the problems I've got with this case is that as I read the jury instructions, the jury was never told clearly what the actual law was in order to allow the jury to decide whether or not it was both clearly established and any reasonable person would have known that this was going to be a violation of the law. What's your response to that? I believe the jury was instructed that defendants Coleman, Fabian, and Pacheco violated plaintiff's ex post facto rights. So they were given the instruction that it was a violation, and then the qualified immunity instruction asked whether under the circumstances in which those defendants were in, whether objectively a reasonable official would have known that their conduct was violating the plaintiff's rights. But how do you answer that question? I mean, I'm now asking you as a lawyer, or hypothetically as a lawyer, or let's assume we're in a law school class or whatever, and the question is, okay, not merely what the law was, but how obvious it should have been to someone seeking to apply the law that this was a violation of it. If all I tell you is, well, this is a violation, it's very hard merely from that for me to decide whether or not the application is an unreasonable application. I forgot one instruction. The jury was instructed that as the meaning of an ex post facto violation and was told that an ex post, I think defendants violate the ex post facto provision by applying a law retroactively to the disadvantage of a person, and one example of a disadvantage is an increase in punishment. So then what the jury was assessing was whether I think, what I think they were doing is they were determining whether the defendants reasonably would have understood that what they were doing was disadvantaging plaintiff from what the situation had been under prior law. And then the facts that they probably looked to to make that determination was the testimony from Diane Ray that there was not an understanding that under prior law there was any kind of right to refuse parole. So forcing Mr. Bollinger out on parole wasn't necessarily, they didn't understand that to be a change. Additionally, there was testimony that very few inmates tried to refuse parole. Most inmates want to go out on parole and not remain incarcerated. So it wasn't an issue that the board had a lot of experience with at the time. And then finally, there's also testimony that parole isn't viewed necessarily as punishment or punitive. It serves an important rehabilitative function so that when a person is released on parole, they're being transitioned back into a community and being provided services to help adjust to the transition back into the community. And I think just if you take the facts of this case, Mr. Bollinger claiming that he had a right to stay in prison for an extra three weeks in the hopes that he would be released on his good time date. There are things that could have had he engaged in some kind of disciplinary infraction. There would be a possibility that his good time date would change. Yeah, that sounds like fantasy land to me. Somebody who's three weeks from a good time release isn't going to pick a fight or, you know, keep his head down and wash his face. I think one of the board members testified when you're comparing incarceration versus parole and given the fact that most inmates do want out, you are comparing apples and oranges. And it's not necessarily clear that putting somebody out on parole when it's not changing the overall sentence imposed by the trial court is a disadvantage or an increase in their time. You've addressed the first mem dispo that we sent back. The second mem dispo says, In the posture presented to us, this qualified immunity question is purely legal. And Bollinger 1 held that the defendants were not entitled to qualified immunity, and that holding controls the appeal as law of the case. That is, in the second time up. Although on remand the defendants produced evidence in support of their motion for summary judgment, no evidence relevant to qualified immunity was presented so that the law of the case is still applicable. Now, the evidence you just went through, is that new evidence? I believe Diane Ray's testimony was new. Some of the facts did come out on summary judgment, but her block of testimony was new testimony for the case. But again, I think that Bollinger 1 is the law that Bollinger 2 held to be law of the case. So that's the controlling ruling. So I think you look to that ruling to decide whether or not it disposes of the case after the case has gone to the jury. Okay. Thank you. Thank you very much. Would you like a minute to respond? Just a couple of clarifications. First of all, I made that distinction between matrix and grid offenders. When Mr. Pacheco was testifying that certain inmates wanted parole, he was speaking about grid offenders. They're eligible for parole under a whole different circumstance. They don't earn good time. Mr. Bollinger was a matrix offender, and he did. But those facts were before the court in the motion dismissed. They were in the court before the summary judgment. Diane Ray's testimony is similar. There's no new factual information. She could have said that it was raining the day I decided to do X. That's not a relevant fact. All she did was rehash everything that had been before the court before. And I would ask the court to really examine this, that it's Pacheco, Coleman, and Fabian that were the ones that made the decision to parole him. Ray was not on the board that time. She was on it much later. And her retrospective, well, let's just say hindsight is 20-20. Okay. Thank you. Thank both sides for their argument. The case of Bollinger v. Fabian is now submitted for decision. We will take a ten-minute break after which we'll come back and hear the last two cases, Barclay-Klamath Falls and AT&T Communications.
judges: Fletcher, Fisher, Roll